UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHY J. BANNICK,

       Plaintiff,                      CIVIL ACTION NO. 06-10179

      v.                           DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF              MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.  Introduction**

      This Social Security case comes before the court on the parties' cross-motions for summary judgment.  For the reasons stated herein, the court recommends that the Commissioner's motion be **GRANTED** and plaintiff's motion be **DENIED**.

**II.  Background**

      On May 31, 2002, plaintiff filed an application for Social Security Disability Insurance Benefits (DIB), claiming that she was disabled due to back, neck, and shoulder impairments, with an onset date of February 13, 2002.  Tr. 44-46, 57.  Plaintiff was 46 years of age when she filed the application.  She completed school through the 10th grade, with a work history including employment as a certified nurse assistant, a certified home health care aide, and a nurse's aide at a home for elderly women.  Tr. 63, 66-69.

The Social Security Administration (SSA) denied plaintiff's claim on August 7, 2002. Tr. 24-28. Plaintiff then requested a hearing before an administrative law judge (ALJ). Tr. 29. The hearing was held on March 12, 2004, before ALJ Douglas Jones. Tr. 432-59. Plaintiff, represented by counsel, appeared and testified at the hearing. The ALJ also took testimony from a vocational expert (VE).

On September 9, 2004, the ALJ issued a decision denying plaintiff's claim. Tr. 13-22. The ALJ determined that plaintiff suffered from the following impairments:

> The medical evidence documents the presence of impairments best described as: degenerative disc disease of the lumbar spine status post laminectomy, discectomy and pedal screw fusion at L4/5 (May 2002); degenerative disc disease of the cervical spine status post laminectomy, discectomy and fusion (January 1996); degenerative joint disease of the left shoulder status post acromioplasty (April 2000); status post cholecystectomy (1975); myofascial pain syndrome; gastroesophageal reflux disease; menopausal syndrome; and depression.

Tr. 18. The ALJ also determined that plaintiff's impairments were "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that they did not meet or equal any impairment listed in Subpart P, Appendix 1 of the Social Security Regulations. Further, the ALJ concluded that plaintiff's impairments prevented her from performing her past work, but that she retained the capacity to perform a limited range of sedentary work and that there were a significant number of sedentary jobs in the regional economy that plaintiff could perform. Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.

Following the ALJ's denial of her claim, plaintiff filed a request for review of the decision with the SSA's Appeals Council. Tr. 10-12. The Appeals Council denied the request

on November 23, 2005. Tr. 5-7. The ALJ's decision thus became the final decision of the Commissioner.

On January 12, 2006, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the parties have filed cross-motions for summary judgment. Plaintiff argues that the ALJ erred in adopting the conclusions of a consulting physician regarding her residual functional capacity and in concluding that her complaints of disabling pain were not fully credible. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  RFC Determination

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that she is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  See 20 C.F.R. § 404.1520.  As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan,

109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.3d at 681.  Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273. A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001).

**IV.  Analysis**

   **A.  Opinion of Consulting Physician**

After determining that plaintiff's impairments did not meet or equal a listed impairment, the ALJ proceeded to assess her residual functional capacity (RFC).  The ALJ's RFC determination is set forth below:

> No period of 12 consecutive months has elapsed during which the claimant lacked the residual functional capacity to perform sedentary work as defined in 20 CFR § 404.1567 that provides the option to sit or stand at will, and involves only occasional use of foot controls, occasional bending at the waist or knees, occasional twisting of the torso, occasional kneeling, occasional climbing stairs, occasional overhead reaching with the left arm, no forceful or sustained gripping or grasping with the left hand, no prolonged or constant rotation, flexion or hyperextension of the neck, no crawling, and no climbing ladders (20 CFR § 404.1567).

Tr. 22.  At the hearing, the ALJ posed a hypothetical question based upon this RFC assessment to the VE, who testified that a person of plaintiff's age, vocational background, and RFC could

work as a surveillance system monitor, a referral and information clerk, or an inspector, and that there were approximately 5,000 such jobs in the regional economy. Tr. 454-55. The ALJ relied upon this testimony in concluding that plaintiff is not disabled.

Plaintiff contends that the ALJ adopted the findings of consulting physician John R. Bartone in assessing her RFC and that he erred in so doing because his findings were based upon the assumption that plaintiff's low back condition would continue to improve after surgery and her condition did not, in fact, improve. The court finds this argument to be unpersuasive. As is readily evident from a comparison of the ALJ's RFC determination and Dr. Bartone's findings, the ALJ did not fully adopt Dr. Bartone's findings. Dr. Bartone concluded that plaintiff could occasionally lift up to 20 pounds; the ALJ restricted her to sedentary work, which involves lifting of no more than 10 pounds.[1]  Tr. 22, 291. Dr. Bartone concluded that plaintiff had no manipulative limitations; the ALJ limited plaintiff to occasional overhead reaching with the left arm and no forceful or sustained gripping or grasping with the left hand. Tr. 22, 293. Dr. Bartone determined that plaintiff could occasionally crawl and climb; the ALJ limited plaintiff to no crawling and no climbing of ladders. Tr. 22, 292. Further, the ALJ expressly stated in his opinion that he was giving "reduced weight" to Dr. Bartone's findings because those findings

---

[1] The regulations define sedentary work as follows:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

"were based upon a review of the medical evidence available to DDS through the time of the initial determination and involved no opportunity to examine, interview or observe the claimant." Tr. 20.  Thus, it is clear that the ALJ did not adopt Dr. Bartone's opinion.  Rather, that opinion was but one factor in the ALJ's disability determination. Accordingly, plaintiff's first claim of error is lacking in merit.

### B.  Plaintiff's Credibility

Plaintiff alleged in her DIB application that she experienced disabling pain.  At the hearing, plaintiff testified that she stopped working as a nurse's assistant in February of 2002 because she was experiencing low back, shoulder, and neck pain that made it difficult for her to lift and transfer patients and perform other job-related tasks.  Tr. 443.  In May, 2002, plaintiff underwent a depressive lumbar laminectomy.  She also underwent a cervical spine discectomy in January of 1996, and an acriomioplasty of the left shoulder in April of 2000.  Plaintiff testified that the laminectomy surgery did not relieve her low back pain, and that she continued to experience significant pain on a daily basis not only in her lower back, but in her right shoulder and neck as well.  Tr. 444-52.

The ALJ determined that plaintiff's complaints of disabling pain were not fully credible, stating the following:

> The claimant's allegations that she can perform no sustained work
> activity because of pain are inconsistent with the objective medical
> evidence, the absence of more aggressive treatment and the
> claimant's ordinary activities.  The claimant's documented
> impairments undoubtedly generate symptoms, but these symptoms
> have not required surgical intervention or hospitalization since the
> surgery in May 2002, and no such aggressive treatment is planned

> or recommended (Exhibits 22F and 23F).  Clinical findings and
> test results show no neurological deficits (Exhibits 29F and 33F).
> The claimant's symptoms have responded to prescribed
> medications when taken as instructed (Exhibit 33F).  The
> claimant's impairments do not prevent the claimant from routinely
> performing daily activities that include performing minor
> household chores, cooking and caring for a small child (Exhibits
> 7E and 9E).  The medical evidence contains no complaints of
> adverse medication side-effects (Exhibits 10E and 33F).

Tr. 19-20.  Plaintiff contends that this determination is not supported by substantial evidence.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997).  Further, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  Id.  With regard to a claimant's assertions of disabling pain, the Sixth Circuit has established the following two-step test:

> First we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the
> alleged pain rising from the condition; or (2) whether the
> objectively established medical condition is of such severity that it
> can reasonably be expected to produce the alleged disabling pain.

Walters, 127 F.3d at 531.

In addition, SSR 96-7p requires an ALJ to give careful consideration to a claimant's allegations of pain and other symptoms and to set forth specific reasons, supported by reference to evidence in the record, for the credibility determination made:

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statement.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p, 1996 WL 374186 at * 4 (S.S.A.).

In concluding that plaintiff's complaints of disabling pain were not entirely credible, the ALJ relied upon essentially four factors: (1) plaintiff had not been hospitalized or undergone surgery since undergoing a depressive lumbar laminectomy in May of 2002, and no surgery was "planned or recommended;" (2) there was no evidence in the record that plaintiff's back condition resulted in neurological deficits; (3) plaintiff's activities of daily living were inconsistent with her complaints of disabling pain; and (4) plaintiff's symptoms responded to

prescribed medications when taken as instructed.[2]  Plaintiff does not argue that the factors cited by the ALJ were not a proper subject of consideration.  Rather, plaintiff contends that the ALJ mischaracterized the evidence and ignored evidence in his assessment of these factors.

As the ALJ found, the record contains objective medical evidence demonstrating that plaintiff has impairments of the left shoulder, lumbar spine, and cervical spine.  Thus, the first prong of the disabling pain test, as set forth in Walters, supra, 127 F.3d at 531, is satisfied.  The question then becomes whether there is substantial evidence to support the ALJ's tacit determination that neither sub-part of the second prong of the test is met.  The court concludes, for the reasons stated below, that the ALJ's determination is supported by substantial evidence.

The court agrees with plaintiff in one regard – there is no evidence to suggest that plaintiff's symptoms responded to prescribed medication in any significant manner.  In support of that statement, the ALJ cited Exhibit 33F, which consists of the medical records of plaintiff's treatment with Dr. Jehad Jafari.  Tr. 427-31.  Dr. Jafari noted on February 11, 2004, that plaintiff had obtained slight relief from taking MS-Contin and Flexeril in combination.  Tr. 430.  The court otherwise found no reference in the record to plaintiff having achieved pain relief through the use of prescription medication.  Thus, the ALJ erred in this respect.  However, even with this aspect of the ALJ's credibility determination stripped away, there is sufficient evidence to

---

[2]The ALJ also referred to a fifth factor – that there was no evidence in the record that the medications plaintiff was taking resulted in adverse side-effects.  This factor may be relevant to plaintiff's RFC, but is not particularly relevant to the determination of whether her complaints of pain were credible.  In any event, plaintiff has failed to point to any evidence in the record indicating that she suffered functionally limiting side-effects from any of the medications she was taken.  Thus, the court has no basis to disturb the ALJ's finding in this regard.

sustain the ALJ's conclusion that plaintiff's allegations of disabling pain were not entirely credible.

A significant factor weighing against plaintiff is a lack of objective medical findings consistent with the level of pain she has reported. As the ALJ noted, examinations have largely revealed no neurological deficits. Immediately prior to the lumbar laminectomy surgery, Dr. D. Gerald Schell examined plaintiff and found that she had positive straight leg raising at 30 degrees, trace weakness of the dorsiflexors, and sensory changes in the L5 distribution. Tr. 266. However, on August 9, 2002, some four months after the surgery, Dr. Schell noted that plaintiff's "x-rays looked good," that she was "making good progress" and that she had "good neurologic function." Tr. 336. On February 11, 2004, Dr, Jafari noted that plaintiff had negative straight-leg raising bi-laterally. Tr. 430. On March 1, 2004, Dr. Jafari found that plaintiff was "grossly intact" neurologically and that she was not experiencing any tingling or numbness. Tr. 427-28. In addition to the lack of evidence of significant neurological deficits, there is no indication in the record of any muscle atrophy or loss of strength related to plaintiff's lumbar spine condition, and while she exhibited paralumbar muscle spasms on examination on one occasion, Dr. Jafari characterized them as "mild." Tr. 427. Further, despite the fact that plaintiff underwent several physical examinations, no physician made any mention of range of motion restrictions related to her lumbar spine condition or placed any specific restrictions upon her activities. In sum, the physical examination findings undercut plaintiff's complaints of disabling pain. See, e.g., Parker v. Sullivan, 996 F.2d 1216 (Table), 1993 WL 190917 (6th Cir.)(Absence of evidence of neurological deficits, muscle spasms, atrophy, significant reflex

deficits, or substantially decreased range of motion supported ALJ's determination that claimant did not experience disabling back pain); Retka v. Commissioner, 70 F.3d 1272 (Table), 1995 WL 697215 (6th Cir.)("The absence in the record of medical evidence showing significant neurological deficits and muscle atrophy supports the ALJ's conclusion that the claimant does not suffer from severe disabling pain due to his back disorder.").

In addition to the above, plaintiff testified that she continued to experience significant pain in her neck and left shoulder on a daily basis. However, there is no evidence in the record that she sought treatment for her neck or shoulder pain since her alleged disability onset date or at any time near her onset date. On January 9, 2001, which was over a year prior to her onset date, plaintiff complained to her physician that she was experiencing neck pain. Tr. 212. That is the last reference in the record to any complaints of neck pain. The last diagnostic test performed on plaintiff's neck was an x-ray taken in February of 2000. Tr. 107. The record also reflects a lack of recent treatment for her shoulder impairment. Plaintiff underwent left shoulder acromioplasty on April, 12, 2000 to repair a partial tear of the supraspinatus tendon, with associated shoulder impingement. Tr. 125. On May 23, 2000, Dr. Michael Wolohan, plaintiff's orthopaedic surgeon, reported that plaintiff's left shoulder was "doing absolutely great. She has excellent motion and no significant pain. At this point we advise gradually increasing strengthening. She is doing extremely well." Tr. 174. On June 6, 2000, plaintiff was released from physical therapy. Plaintiff's therapist noted that she had generally met her therapeutic goals and that plaintiff reported little discomfort and little difficulty performing activities of daily living. Tr. 192-93. There is no evidence in the record that plaintiff sought treatment for

her shoulder after June of 2000. This lack of recent treatment history undercuts plaintiff's complaints of disabling pain. See Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir. 1990)(failure to seek treatment undercuts complaints of disabling pain).

     The ALJ also concluded that plaintiff's activities of daily living were inconsistent with her complaints of disabling pain: "The claimant's impairments do not prevent the claimant from routinely performing daily activities that include performing minor household chores, cooking, and caring for a small child." Tr. 19-20. Plaintiff takes issue with the ALJ's determination that these activities undercut her complaints of disabling pain. However, the court finds no error in the ALJ's assessment of these activities. Plaintiff testified, and indicated in her DIB application materials, that she took care of her grandson five days per week from approximately 11 a.m. to 6 p.m. Tr. 78, 446. At the time of the hearing, plaintiff's grandson was four years old, and plaintiff had been taking care of him since he was two. Tr. 458. Though plaintiff painted a picture of a relatively sedentary day, the record reflects that plaintiff prepared meals for her grandson, changed his diapers, and engaged in activities with him such as reading and walking. Tr. 90-99. The record also reflects that plaintiff cooks for herself and her husband on a regular basis, that she does laundry, that she goes grocery shopping on a weekly basis for one hour at a time, and that she does some light cleaning. Tr. 76-99. Plaintiff also testified that she and her husband would go camping in the summertime in their motorhome and that she would drive the motorhome on occasion. Tr. 440-41, 451. Plaintiff's activities of daily living, as reported by her, do not appear to be extensive. However, in light of the activities described above, the court cannot say that the ALJ erred in weighing this factor against plaintiff.

To be sure, there is evidence in the record that bolsters plaintiff's allegations of disabling pain. Plaintiff consistently complained to her physicians of significant low back pain both before and after her alleged onset date, and she has taken prescription pain medications, such as Vicodin and Darvocet, for many years. Further, plaintiff has a fairly extensive treatment history, at least with respect to her low back condition. In addition, prior to her disability onset date, plaintiff had a consistent work history dating back to 1984. See, e.g., Felisky v. Bowen, 35 F.3d 1027, 1041 (6th Cir. 1994)("Additional factors supporting Felisky's credibility are that she had a long, 17 year, work history...."). A finder of fact reviewing the record in the first instance might reasonably conclude that plaintiff's allegations of disabling pain are credible. However, it is not the role of the court to make credibility determinations or to resolve conflicts in the record regarding credibility. Rather, that function is within the province of the ALJ. The court's sole function is to determine whether the ALJ's findings are supported by substantial evidence. See Smith, supra, 307 F.3d at 379. Here the ALJ resolved the conflicts in the evidence and found that plaintiff's allegations of disabling pain were only partially credible. The court concludes, based upon the lack of objective medical findings consistent with the level of pain plaintiff has reported, the lack of recent treatment history for her neck and shoulder impairments, and her activities of daily living, that there is substantial evidence in the record to support the ALJ's determination that plaintiff's allegations of pain were only partially credible.

### C.  Substantial Evidence Review

This case essentially turns on the question of whether plaintiff's allegations of disabling pain were fully credible. The ALJ concluded that they were not and that while plaintiff was

severely impaired, she had the RFC to perform a limited range of sedentary work. Having concluded that there is substantial evidence in the record to support the ALJ's credibility determination, the court also concludes that there is substantial evidence in the record to support the ALJ's disability determination.

Plaintiff has pointed to no specific errors in the ALJ's RFC determination, and none are apparent in the record. The ALJ reasonably resolved the conflicts in the record and included substantial restrictions in the RFC determination to accommodate plaintiff's impairments. No physician of record found plaintiff to be totally disabled or recommended greater restrictions. In response to a hypothetical question based upon the ALJ's RFC determination, the VE testified that a person with such limitations could work as a surveillance system monitor, a referral and information clerk, and an inspector, and that there were over 5,000 such jobs in the regional economy. Tr. 454-55. Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Here, the VE testified in response to an accurately formed hypothetical that there were a significant number of jobs in the regional economy that plaintiff could perform. See, e.g., Martin v. Commissioner of Social Security, 170 Fed.Appx. 369, 375 (6th Cir. 2006)(870 jobs in claimant's geographical region a significant number of jobs); Stewart v. Sullivan, 1990 WL 75248 (6th Cir.(Ky.))(125 jobs in two

county area of Kentucky a significant number).  Accordingly, the VE's testimony constitutes substantial evidence in support of the ALJ's determination that plaintiff is not disabled.

## V.  Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED** and that plaintiff's cross-motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

 unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                s/Virginia M. Morgan
                                VIRGINIA M. MORGAN
Dated: February 8, 2007        UNITED STATES MAGISTRATE JUDGE

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on February 8, 2007.

                                s/Jane Johnson
                                Case Manager to
                                Magistrate Judge Virginia M. Morgan